UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

GERARD PRICE,

                           Defendant.
----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**05-CR-492 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

This Memorandum and Order addresses several pre-trial matters pertaining to the prosecution of Gerard Price ("Defendant" or "Price"). Before the court are the Government's motions in limine to introduce evidence of uncharged acts, Defendant's motion to exclude his prior convictions, and Batson challenges raised by both parties at the close of jury selection.

For the reasons set forth below, the Government's motions in limine are GRANTED, Defendant's motion to exclude prior convictions is DENIED in part and RESERVED in part, and the Batson motions are each DENIED.

**I.    Uncharged Acts**

Price faces charges of substantive racketeering and racketeering conspiracy, murder, drug trafficking, illegal use of a firearm, and witness tampering in connection with his alleged participation in a Brooklyn-based criminal organization, referred to as the "Pressley/Price Enterprise" (the "PPE"). (See Docket Entry # 94 (the "Indictment").) The Government has moved to admit evidence of additional, uncharged acts at his upcoming trial. The Government argues that these acts are each admissible as direct evidence of the crimes charged in the

1

Indictment, and in the alternative, as Rule 404(b) evidence. Specifically, the Government has sought to admit evidence that:

1) Defendant was a member of the Bloods street gang;
2) Defendant was previously incarcerated on several occasions;
3) Defendant smoked marijuana;
4) Defendant was arrested on September 29, 2001 for driving while impaired as a result of his marijuana use, which led to a search of his vehicle that uncovered a concealed gun (the "Gun"); and
5) On one occasion, Defendant assaulted and shot at two unidentified individuals (the "Uncharged Assault").

(See Docket Entry #105 (Gov't First Motion in Limine, "Gov't First Mot."); Docket Entry #107 ("Gov't Second Mot.").)

At oral argument before the court, the defense represented that it did not object to the introduction of evidence regarding Defendant's prior periods of incarceration and Defendant's alleged marijuana use. (See Transcript of April 8, 2009 Hearing ("Tr."), 515-16.) The court finds that these categories of evidence are admissible because the evidence is "inextricably intertwined with the evidence regarding the charged offense" and is "necessary to complete the story of the crime [on] trial." United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (internal citation omitted); accord United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000). Rule 404(b) is not implicated by the introduction of this evidence. The court has examined the evidence and independently concludes that the evidence is not unduly prejudicial to the Defendant.

Similarly, the parties have resolved the issue of the Uncharged Assault. The Government originally asserted that evidence of the Uncharged Assault was necessary to provide context for certain inculpatory statements allegedly made by the Defendant to a cooperating witness. (See Gov't Second Mot. 2-3.) The parties have agreed that the Government may elicit testimony regarding the inculpatory statements, but will avoid any inquiry as to the Uncharged Assault allegedly leading up to those statements. In exchange, the defense has agreed to forgo cross-

examination challenging the fact that the alleged inculpatory statements were made. Evidence of the Uncharged Assault is therefore excluded, according the terms agreed to by the parties and set forth above.

The defense maintains its objections to evidence regarding Defendant's alleged membership in the Bloods, and the introduction of the Gun. The defense opposes both on relevance and Rule 403 grounds. While the defense has identified legitimate concerns, the court concludes that both forms of evidence are ultimately admissible as direct evidence related to the charged crimes.

### A. The Gun

The Government asserts that the Gun is direct evidence the Defendant's illegal use of a firearm in furtherance of drug trafficking crimes, a violation of 18 U.S.C. § 924(c) charged in Count Six of the Indictment. The Indictment alleges that Defendant used and carried a firearm for this unlawful purpose from approximately June 2000 and June 2002. The recovery of the Gun from Defendant's vehicle in September 2001 is direct evidence of the charged offense. The Government represents that its cooperating witnesses will testify further that it was the Defendant's usual practice to carry a gun in the trap of his car, which is where the Gun in question was discovered. (Tr. 519.) In opposing the evidence of the Gun, the defense has argued that the Gun is irrelevant because it is not tied with the violence in the case, that is, the murder and attempted murders, and because the Defendant was never charged with an offense related to the Gun at the time of the September 2001 arrest.[1] (Tr. 518.) These arguments are unavailing. Defendant is charged with illegal use of a firearm, not only violent crimes. The fact that Defendant was not previously charged or convicted of any offense relating to his possession of the Gun in 2001 has no bearing on the issue before the court. Rule 404(b) has no application

---

[1] According to the defense, the Gun was dismissed by the grand jury following the 2001 arrest. (Tr. 518.)

to these circumstances; this prior uncharged act is now part and parcel of a charged crime. The Gun is admissible as evidence in support of Count Six.

### B. Bloods Membership

Defendant's alleged membership in the Bloods, a notorious nationwide street gang, raises a substantial issue of prejudice. The court recognizes that media reports and portrayals have engraved a violent image of the Bloods in the popular conscience. As the Supreme Court has observed, the restriction on unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). The trial court must be vigilant where there is a "tendency of the evidence [in question] to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).

This prejudice weighs heavily where, as here, Defendant's purported membership in the Bloods is not an element of the charges against him. The criminal enterprise charged in the Indictment, the Pressley/Price Enterprise, is an organization separate and apart from the Bloods. It is understood that the Pressley/Price Enterprise bears no direct relationship to the Bloods, that Bloods membership was not a condition of association with the Pressley/Price Enterprise, and that, in fact, the organization consisted of members with allegiances to the Bloods as well as their rival gang, the Crips. Defendant argues that Rule 403 mandates exclusion because his alleged Bloods membership is irrelevant to the charges, and the introduction of this allegation would inure tremendous prejudice against him, "splatter[ing] this case with discussion about the Bloods." (Tr. 526.)

4

The court nonetheless concludes that the evidence is relevant, necessary to complete the story of the crimes on trial, and the danger of unfair prejudice does not substantially outweigh the probative value of this evidence. The Government has argued primarily that Defendant's alleged Bloods membership is necessary to explain certain slang he used, to explain how he recruited other members to join the Pressley/Price Enterprise, and to describe the powerful role he held in the community. (Tr. 520-21; 528.) Specifically, one cooperating witness will reportedly testify that Price wrote him a letter, urging him not to tell the Government about the "peter roll," which he says is coded Bloods slang for murder. (Id.; Gov't First Mot. 12.) The Government argues that this letter is an admission of a central crime in the Indictment, the murder of Ronald Chavis, and direct evidence of the witness tampering charge. (Id.) Further, the Government asserts that Defendant's Bloods membership is essential to provide the motive for certain acts, namely, one of the attempted murders charged in the Indictment. (Tr. 532.)

Evidence of Defendant's alleged membership in the Bloods is helpful, but not essential, to explaining the significance of the term "peter roll" to the jury. The court is unpersuaded that the derivation of "peter roll" from Bloods slang code, standing alone, would be so crucial to the Government's case that it could outweigh the prejudice. A more casual or sanitized explanation of the term as "street slang" or terminology routinely used by the Defendant and his associates could arguably suffice. However, the court need not decide the issue on this basis. The Government's final argument, that evidence of Defendant's alleged Bloods membership is necessary to explain the motive for a charged crime, is dispositive. At oral argument, the Government revealed that one of the attempted murders charged in the Indictment was allegedly precipitated by the victim's failure to "'peace' one of the defendant's colleagues, give the defendant's associate a particular Bloods handshake." (Tr. 532.) As a result, in part, of this

5

insult, the Defendant and others allegedly attacked and stabbed this individual. (Id.) This sequence of events demonstrates that the Bloods evidence is "inextricably intertwined with the evidence regarding the charged offense" and is "necessary to complete the story of the crime [on] trial." Towne, 870 F.2d at 886.[2] Admission of the evidence is therefore appropriate and the Government's motion is granted.

Further, affirmative steps have already been taken to mitigate any prejudicial effect of the evidence regarding membership in the Bloods. Anticipating the potential issue surrounding Defendant's alleged Bloods affiliation, the juror questionnaire utilized in the selection process specifically asked the venire members to consider their views on gang membership and whether such evidence might impair their impartiality. Questions 60-61 of the questionnaire asked the venire members to list any gangs they had heard of in New York, whether they were aware of gang activity in their communities, and whether they or anyone they knew had feared reporting criminal activity to law enforcement because of the threat of gang retaliation. Question 62 pointedly asked: "If you believed a defendant was a gang member, would that fact alone, without hearing additional evidence such as the nature of the gang and the defendant's involvement affect your ability to serve as a fair and impartial juror?" Juror responses to these questions were repeatedly scrutinized and probed by the court during voir dire. The court will continue to police any evidence related to the Bloods for undue prejudice at trial. The Government is warned that the admissibility of the Bloods evidence does not come with a blank check, but rather must be narrowly tailored to its relevance to the charged crimes.

---

[2] Evidence of uncharged or prior bad acts is also specifically admissible under Rule 404(b) for relevant purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," provided that the evidence complies with Rule 403. Fed. R. Evid. 404(b) (emphasis added). The Second Circuit has adopted an "inclusive" approach to Rule 404(b). United States v. Stevens, 83 F.3d 60, 68 (2d Cir. 1996). Evidence of other acts may be admitted for "any purpose except to show criminal propensity, unless the trial judge concludes that its probative value is substantially outweighed by its potential for unfair prejudice." United States v. Germosen, 139 F.3d 120, 127 (2d Cir. 1998).

## II. Prior Convictions

Defendant has moved to exclude his prior convictions. The Government has opposed the request, on the grounds that some of these convictions are admissible as direct evidence of the charged crimes. (See Gov't First Mot. 18-19 (narcotics plea constitutes evidence of narcotics offenses charged in Racketeering Acts Six, Seven, and Eight; firearms conviction constitutes evidence of Count Six, illegal use of a firearm in violation of 18 U.S.C. 924(c)(1)(A)(i)-(iii).)

Pursuant to United States v. Persico, 774 F.2d 30 (2d Cir. 1985), prior convictions are admissible insofar as they constitute proof of RICO predicate acts charged in the Indictment. Id. at 32 ("Congress intended to permit conduct resulting in prior convictions to be used as predicate acts of racketeering activity to establish subsequent RICO convictions." The fact of Defendant's narcotics plea is deemed admissible for this purpose.

The Government has not set forth authority regarding the relationship of the prior firearms conviction to the present charge. Under Garrett v. United States, 471 U.S. 773 (1985), "the pertinent inquiry . . . is whether Congress intended a subsequent prosecution after a prior conviction and, if so, whether, under the particular circumstances, a double jeopardy violation occurs." Persico, 774 F.2d at 32; see, e.g., United States v. Khalil, 214 F.3d 111 (2d Cir. 2000) (applying Garrett to charge under 18 U.S.C. § 924(c)). The court orders the Government to submit supplemental briefing, addressing the requisite analysis under Garrett, by close of business on Tuesday, April 14, 2009.

## III. Batson Challenges

Following jury selection, each party challenged the opposition's use of peremptory strikes as violations of Batson v. Kentucky, 476 U.S. 79 (1986).[3] The defense cited the

---

[3] In Batson, the Supreme Court held that a prosecutor's use of peremptory challenges to exclude members of a "cognizable racial group" from the jury violates a defendant's Equal Protection rights.

Government's use of four of its six strikes on black jurors; the Government raised a reverse Batson challenge to the defense's exercise of nine of its ten peremptory challenges against white jurors. (Tr. 489-90, 492.) At sidebar, the parties provided race-neutral explanations for striking each juror from the panel. (Tr. 489-497.) The court provided the moving parties with an opportunity to respond, and several of the explanations were contested as pretextual. (Id.); see Jordan v. Lefevre, 206 F.3d 196, 200-01 (2d Cir. 2000).

The court denied both parties' Batson challenges at the close of this exchange. The court ruled that the parties' neutral explanations were rational, not pretextual, and "more than a simple denial of discriminatory intent." (Tr. 497.) In reaching this conclusion, the court considered "how many members of the cognizable racial group are in the venire panel from which the petit jury is chosen, the pattern of strikes against racial group jurors in the particular venire, the [non-moving party's] statements and questions during selection, as well as any other relevant circumstances." Tankleff v. Senkowski, 135 F.3d 235, 249 (2d Cir. 1998.) The record reflects that each party's neutral justifications for its strikes were reasonable, probable, and rooted in "accepted trial strategy." Miller-El v. Cockrell, 537 U.S. 322, 339 (2003). The strikes were based on juror questionnaire answers and responses to follow-up questions at voir dire. The court observed the demeanor of the attorneys exercising the strikes, and found them to be consistently professional and credible. Despite the Batson dispute, the resulting jury is remarkably diverse in its composition, with substantial numbers of both black and white jurors remaining alongside other individuals of various races and ethnicities. As the court also noted on the record, the Government struck two non-black jurors, and the defense struck one black juror. See United States v. Alvarado, 923 F.2d 253, 256 (2d Cir. 1991) (a party's "decision not to use

an available challenge against minority veniremen is also a relevant circumstance to be weighed."). The court concludes that no Batson violation occurred.

**IV.    Conclusion**

The Government's motions in limine to introduce evidence of uncharged acts are granted. Defendant's motion to exclude prior convictions is denied in part and reserved in part pending supplemental briefing by the Government. As determined on the record during jury selection, the parties' cross-motions under Batson are denied.

SO ORDERED.

|  |  |
|---|---|
| Dated: Brooklyn, New York<br>April 10, 2009 | s/ Nicholas G. Garaufis<br>NICHOLAS G. GARAUFIS<br>United States District Judge |