UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

-against-

GERARD PRICE,

Defendant.

------------------------------------------------------------X

**MEMORANDUM & ORDER
05-CR-492 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

On January 6, 2006, a grand jury in the Eastern District of New York indicted Defendant Gerard Price ("Price") on charges stemming from his alleged involvement in the "Price-Pressley Enterprise," a large-scale narcotics trafficking organization that operated in the Gowanus public housing development ("Gowanus") in Brooklyn, New York. (Superseding Indictment (Docket Entry # 21).) The case proceeded to trial and on April 24, 2009, a jury convicted Price of racketeering (Count One) in violation of 18 U.S.C. § 1962(c), including predicate acts of murder (Racketeering Act ("RA") 1(A)), attempted murder (RA 1(B), 2-4), conspiracy to distribute crack cocaine and heroin (RA 5(A)), conspiracy to maintain narcotics stash houses (RA 5(B)), and possession of crack cocaine with the intent to distribute (RA 6-7); racketeering conspiracy (Count Two), in violation of 18 U.S.C. § 1962(d); murder in-aid-of racketeering (Count Three), in violation of 18 U.S.C. § 1959(a)(1); drug-related homicide (Count Four), in violation of 21 U.S.C. § 848(e)(1)(A); conspiracy to maintain narcotics stash houses (Count Five), in violation of 21 U.S.C. § 846; illegal use of firearms (Count Six), in violation of 18 U.S.C. § 924(c)(1)(A); and witness tampering (Count Seven), in violation of 18 U.S.C. § 1512(b)(1). (Verdict Form (Docket Entry # 153).)

1

Price now moves under Federal Rules of Criminal Procedure 29 and 33 for (1) a new trial based on ineffective assistance of trial counsel; (2) a judgment of acquittal on RAs 1(A) and 1(B) (the murder of Ronald Chavis and attempted murder of Michael Brown), Count Three (murder of Chavis in-aid-of racketeering), and Count Seven (witness tampering) based on the insufficiency of the evidence; and, (3) in the alternative, a new trial on RAs 1(A) and 1(B) and Counts Three, Four (drug-related homicide) and Seven because the verdict was against the weight of the evidence. (Docket Entry # 83.)

As set forth below, Price's motions are DENIED.

I. **STANDARD OF REVIEW**

   A. **Standard of Review for a Rule 29 Motion**

Rule 29 of the Federal Rules of Criminal Procedure provides that a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In considering a Rule 29 motion, "the court must be careful to avoid usurping the role of the jury." United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999). "A defendant bears a heavy burden in seeking to overturn a conviction on grounds that the evidence was insufficient." United States v. Aleskerova, 300 F.3d 286, 292 (2d Cir. 2002). A conviction must be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Santos, 541 F.3d 63, 70 (2d Cir. 2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). The court must draw all inferences in favor of the Government, United States v. Finley, 245 F.3d 199, 202 (2001), and may only enter a judgment of acquittal "if the evidence that the defendant committed the crime alleged is

nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." Guadagna, 183 F.3d at 130.

### B. Standard of Review for a Rule 33 Motion

Federal Rule of Criminal Procedure 33 provides that "upon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 1997). A court should grant a Rule 33 motion only "in the most extraordinary circumstances." United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993). "Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion of acquittal pursuant to Fed. R. Crim. P. 29, where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). Before ordering a new trial, a court must find that there is "a real concern that an innocent person may have been convicted." Id.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Price seeks a new trial under Federal Rule of Criminal Procedure 33, asserting that the two lawyers who represented him at trial rendered constitutionally deficient performance.[1] Specifically, Price argues that defense counsel erred in three respects: (1) by failing to seek to preclude or limit use of his nickname "Crime," (2) by failing to object to improper opinion testimony, and (3) by failing to challenge the indictment's lack of specificity. As set forth below, the court finds that Price's arguments are without merit.

---

[1] Price is now represented by new counsel.

3

A.  **The Constitutional Standard**

To prevail on an ineffective assistance claim, a defendant must establish: (1) that defense counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the case would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984).

To satisfy Strickland's first prong, a defendant must demonstrate that his counsel's actions were unreasonable "considering all the circumstances." Id. at 688. A court must assess counsel's performance "on the basis of the facts of the particular case 'viewed as of the time of counsel's conduct'" and without the benefit of hindsight. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," Strickland, 466 U.S. at 690-91, even where counsel adopts "a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." Tippins v. Walker, 77 F.3d 682, 686 (2d Cir. 1996). "[A] strategic decision is a conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004).

Strickland's second prong requires that a defendant prove actual prejudice, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not enough for the defendant to show that counsel's errors had some conceivable effect on the outcome of the proceeding. Id. at 693. In determining the impact of the alleged errors, the court "must consider the totality of the evidence before the judge or jury." Id. at 695.

Because a defendant bears the burden on both prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the [Strickland] inquiry if the defendant makes an insufficient showing on one.", Id. at 697; see also United States v. Vegas, 27 F.3d 773, 778 (2d Cir. 1994) (considering only first prong); Farrington v. Senkowski, 214 F.3d 237, 242 (2d Cir. 2000) (considering only second prong).

### B. Use of Price's Alias

Price concedes that his trial counsel were "extremely experienced." (Def. Mem. (Docket Entry # 184) 26.) He argues, however, that they unreasonably failed to move in limine to exclude the use of his nickname "Crime" or to obtain a limiting instruction. (Id. at 26-33.) Considering all the circumstances, however, this decision was not objectively unreasonable. The written questionnaire given to the jury during voir dire disclosed that Price was known as "Crime" and asked jurors whether the use of that alias would interfere with their ability to be fair and impartial.[2] (See Juror Questionnaire, Question #76.) It appears that defense counsel decided to identify and strike potential jurors for whom this alias would be prejudicial, instead of attempting to artificially limit or preclude its use at trial. Thus, Price has not satisfied the first prong of Strickland.

Even assuming that trial counsel's decision not to move to limit the use of the nickname was unreasonable, however, it is highly unlikely that Price suffered any prejudice. Price asserts that "[r]epeatedly hearing the nickname Crime, combined with the multitude of criminal offenses charged in the indictment left open the door for the jury to consider the nickname as propensity evidence" in violation of Federal Rule of Evidence 404. (Def. Mem. 27.) Price does not claim his nickname should not have been used at all, but only that its "frequent and repeated

---

[2] The same question asked jurors whether they would be prejudiced by the use of the nickname "Bloody Crime," which was also listed in the indictment as an alias of the Defendant. Defendant was not identified at trial by that alias and the does not now assert that he was prejudiced by its inclusion in the questionnaire.

invocation" by trial witnesses was problematic. (Id.) He relies principally on United States v. Farmer, 583 F.3d 131 (2d Cir. 2009). In Farmer, which was decided after Price's trial concluded, the Second Circuit found that a trial court erred in permitting repeated references to the defendant's nickname – "Murder" – in the murder case against him. Id. at 133. The trial court denied Farmer's motion to limit the use of the nickname and did not give any curative instruction to the jury. Id. at 146.

Farmer does not, however, support Price's argument that he was prejudiced by trial counsel's failure to make such a motion. As the Farmer court explained, "the suggestiveness of [a] nickname has not required exclusion . . . when it helped to identify the defendant." Farmer, 583 F.3d at 146. And it is proper to admit nickname testimony where it consists of "references by witnesses who know [the defendant] by that name." Id. Here, Price acknowledges that "all of the witnesses knew [him] as Crime," such that some testimony using that alias was inevitable, regardless of any motion. (Def. Mem. 30.) Moreover, in Farmer, the Second Circuit characterized the "prosecutors' frequently repeated, gratuitous invocation of Farmer's nickname in their addresses to the jury" as the "main problem." Farmer, 583 F.3d at 147. Here, Price concedes that "the government did not overuse the nickname Crime during its opening or closing arguments to the jury." (Def. Mem. at 31.)

Price nevertheless contends that the jury may have inferred a criminal propensity from his nickname. But Price's criminal history was both undisputed and properly introduced at trial. (See Gov't Mem. (Docket Entry # 187) 34).[3] The prejudicial impact of the alias "Crime" was more limited than that associated with the alias "Murder" in Farmer. The defendant in Farmer was on trial for murder and, under the circumstances of that case, it was considerably more likely

---

[3] At the beginning of his summation, Defendant's trial counsel stated "Did Gerard Price deal drugs? Certainly, of course. There's – we never disputed that." (Tr. 1859.)

6

that the jury would infer, solely from his nickname, that the defendant was guilty of the crime with which he was charged. See Farmer, 583 F.3d at 146 (defendant's nickname highly suggestive of his "propensity to commit particularly heinous crimes, including the very offenses charged in the indictment").

In light of the strong evidence that Price committed the crimes with which he was charged – discussed in greater detail below – and the limited potential for prejudice arising out of the manner in which his nickname was actually invoked at trial, Price has failed to satisfy the second prong of Strickland.

### C. Detective Joseph Fazzingo's Testimony

Price next argues that trial counsel's failure to object to testimony given by New York Police Department ("NYPD") Detective Joseph Fazzingo constituted ineffective assistance. (Def. Mem. 33-37.) Specifically, Price asserts that, without objection from trial counsel, Fazzingo provided improper opinion testimony regarding the origins of cocaine and heroin. (Def. Mem. at 34-35.) Fazzingo was not qualified as an expert.

Fazzingo testified that he had worked for the NYPD for over eighteen years. (Tr. 1404.) He had been involved with narcotics investigations for approximately fifteen years and, most recently, had spent over eight years working for the Brooklyn South Narcotic Bureau's "Major Case Squad." (Id.) At one point during Fazzingo's testimony, the following exchange occurred:

> Q: During your time working in Narcotics did you learn what substances cocaine is made from?
> A: Yes.
> Q: What?
> A: Cocoa leaves --
> Q: Have you ever seen any of those substances growing near Gowanus?
> A: Not recently, no..
> Q: Based on your experience where would cocoa leaves generally come from?
> A: Colombia.
> Q: What about heroin, what substance is heroin made from?

7

> A: Poppy plants..
> Q: Have you ever seen any poppy plants growing in Gowanus Houses?
> A: No.
> Q: Based on your experience where would poppy plants come from?
> A: Mostly Afghanistan.

(Id. at 1444-45). Price's trial counsel did not object at any point during this exchange.

Under Federal Rule of Evidence 701, a lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." The portions of the above-quoted testimony that were not based on Fazzingo's own observations appear to exceed the scope of Rule 701. Price asserts that, "[h]ad Det. Fazzingo's improper expert opinion been excluded from the trial," there would have been insufficient evidence that the racketeering crimes affected interstate commerce. (Def. Mem. 37.)

Assuming, however, that trial counsel's decision not to object was unreasonable, Price was not meaningfully prejudiced. The Government only needed to prove a "minimal" effect on interstate commerce. See United States v. Miller, 116 F.3d 641, 673 (2d Cir. 1997). Where "a RICO enterprise's business is narcotics trafficking, that enterprise must be viewed as substantially affecting interstate commerce, even if individual predicate acts occur solely within a state." Id. at 674. Here, there was substantial evidence at trial that the Price-Pressley Enterprise was engaged in a significant narcotics trafficking operation. In its summation, the Government also argued that the Price-Pressley Enterprise, by virtue of its size and scope, inevitably impacted interstate commerce. (Id. at 1811.) Fazzingo also testified that drug vials used by the Price-Pressley Enterprise were labeled as having been manufactured in China. (Tr.

1434.) Thus, there is no basis for concluding that, absent the testimony Price now identifies, the Government would have been unable to satisfy the interstate commerce element. Because Price has not shown that he suffered prejudice from his trial counsel's decision not to object, he has not met his burden under Strickland.

### D. Sufficiency of the Indictment

Finally, Price argues that trial counsel's failure to move, prior to trial, to dismiss Racketeering Acts Two, Three, and Four as insufficiently pled constitutes ineffective assistance. Under Federal Rule of Criminal Procedure 7(c), an indictment must be a "plain, concise, and definite written statement constituting the offense charged." This requirement performs three constitutional functions: "[i]t fulfills the Sixth Amendment right 'to be informed of the nature and cause of the accusation;' it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999).

Price now asserts that the charges regarding Racketeering Acts Two and Four had an "impermissibly vague and overbroad temporal span" and that the charges regarding Racketeering Acts Two, Three, and Four were not sufficiently specific regarding the identity of the alleged victims. (Def. Mem. 39.) But an indictment need "do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Walsh, 194 F.3d at 44. And to satisfy the requirements of the Sixth Amendment, the indictment merely must "inform the defendant of the offense charged with sufficient clarity so that he will not be misled while preparing his defense." United States v. Pirro, 212 F.3d 86, 98 (2d Cir. 2000). The indictment in this case was specific enough to perform these functions.

Even assuming that these minimal requirements were not met, however, Price has not satisfied the second prong of Strickland. If trial counsel had successfully challenged the indictment, the Government simply would have had to provide a bill of particulars or re-plead the charges. Accordingly, Price has failed to establish that he was prejudiced by trial counsel's decision not to object to the indictment and has not established ineffective assistance of counsel.

## II. CHALLENGES TO THE JURY'S VERDICT

Price challenges several aspects of the jury's verdict. Specifically, he moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29, asserting that there was insufficient evidence to support the jury's verdict on the Chavis murder (RA(1)) and Brown attempted murder (RA(2)) racketeering predicates, the murder in-aid-of racketeering charge (Count Three), and the witness tampering charge (Count Seven). In the alternative, Price seeks a new trial under Federal Rule of Criminal Procedure 33 on those charges, as well as the drug-related homicide charge (Count Four).

### A. Rule 29 Claims on Murder-Related Charges

Price argues that there was insufficient evidence to support the jury's verdict on Racketeering Act 1(A) and Count Three, both of which involved the murder of Ronald Chavis, and Racketeering Act 1(B), which involved the attempted murder of Michael Brown. All three of these charges related to shootings that occurred on August 20, 1999. Specifically, Price asserts that the Government presented insufficient evidence that his purpose in shooting Chavis and Brown was to maintain or increase his position in the Price-Pressley Enterprise and insufficient evidence that the murder was "related" to the affairs of the Enterprise. (Def. Mem. 45, 47.)

10

1) <u>Murder in-aid-of Racketeering</u>

Title 18, United States Code, Section 1959(a)(1) prohibits murder committed "for the purpose of . . . maintaining or increasing position in an enterprise engaged in racketeering activity." The offense "encompasses violent crimes intended to preserve the defendant's position in [an] enterprise or to enhance his reputation and wealth within that enterprise." <u>Id.</u> But the Government need not prove that maintaining or increasing position in a particular enterprise "was the defendant's sole or principal motive." <u>United States v. Concepcion</u>, 983 F.2d 369, 381 (2d Cir. 1992). The motive requirement is satisfied if "the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." <u>Id.</u>

2) <u>Pattern of Racketeering Activity</u>

The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." <u>See</u> 18 U.S.C. § 1962(c). The two elements of the RICO "pattern" requirement are "relatedness" and "continuity." <u>United States v. Minicone</u>, 960 F.2d 1099, 1106 (2d Cir. 1992). To satisfy the relatedness requirement, the charged racketeering acts must be related both to each other and to the charged enterprise. <u>Id.</u> "It is not necessary that the offense be in furtherance of the enterprise's activities for the offense to be related to the activities of the enterprise." <u>United States v. Bruno</u>, 383 F.3d 65, 84 (2d Cir. 2004). Evidence of relatedness "may arise from facts external to the two predicate acts, including the nature of the RICO enterprise itself." <u>Minicone</u>, 960 F.2d at 1106. Two racketeering acts that are not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise. <u>Id.</u>

11

3) <u>Discussion</u>

Price argues that, assuming that he intentionally shot Chavis and Brown, "his motive had nothing to do with the Pressley/Price Enterprise." (Def. Mem. 48.) Specifically he asserts that there was evidence that he, Chavis, and Brown sold drugs independently of the Price-Pressley Enterpise and that the "shooting was done to settle a personal vendetta." (Id. at 46.) Price identifies trial testimony suggesting that he shot Chavis and Brown because he was upset that they did not promptly provide him with bail money following an arrest in 1999. Terrance Wright, a cooperating witness, recounted a conversation with Price's girlfriend shortly after that arrest. (Id. at 1294-96.) According to Wright, she told him that she was trying to contact Chavis and Brown so that they could bail out Price. (Id. at 1293.) Brown himself testified that he heard that he had been shot because he failed to post Price's bail. (Id. 1174-76.) There was, however, also evidence undermining this account of Price's motivation. For example, Brown testified that he and Chavis had given Price's girlfriend the bail money she requested. (Id.) And when Brown saw Price following his release from custody, Price did not express any anger regarding the time that it took for him to be released. (Id. at 1079.)

When faced with a Rule 29 motion, however, a court's role is not to weigh the evidence anew. Instead, the court must evaluate whether, drawing all inferences in favor of the Government, no rational jury could have found the essential elements of the crime beyond a reasonable doubt. See Finley, 245 F.3d at 202. Here, there was considerable evidence that Price shot Chavis and Brown in furtherance of his membership in the Pressley/Price Enterprise. Contrary to Price's assertions, the evidence demonstrated that the drug sales Price made in conjunction with Chavis and Brown were integrated with the larger Pressley-Price Enterprise. For example, Lewis Ramsey, a cooperating witness, testified that he, along with other "workers,"

12

sold drugs on behalf of Price and his brother, Robert. (Id. at 655.) Ramsey also testified that he received drugs from both brothers. (Id. at 662.) On one occasion, Ramsey also received drugs from Brown. (Id. at 708-09.)

Wayne Evans, another cooperating witness, testified that Robert Price asked him to sell drugs on his behalf while Robert Price was in custody from late spring 2001 to February 2002. (Id. at 1582-83). Evans worked with Gerard Price to package and sell drugs. (Id. at 1584-85.) Every Friday, Evans gave Gerard Price $500 to give to Robert Price. (Id. at 1582-83.) Brown testified that, in the spring of 1999, he pooled his money with Gerard Price and Chavis to buy crack. (Id. at 1067-70.) Brown testified that the three men relied on individuals who also worked for Robert Price to sell their drugs, including Ramsey. (Id. at 1074.) Thus, there was considerable evidence that, at the time Price shot Chavis and Brown, he was operating as part of the Price-Pressley Enterprise.

There was also evidence that the dispute that precipitated the shooting was related to the Price-Pressley Enterprise's drug business. For example, Wright testified that Price told him that he was upset with the way that Chavis and Brown had handled $10,000 in drug proceeds. (Id. at 1298-99.) Evans testified that, while he was incarcerated with Price, Price told him that he had shot Brown and Chavis because they "messed up" his drug money. (Id. at 1570) Brown also expressed his belief that Price was motivated by a desire to keep the profits of their drugs sales, as well as the remaining drugs. (Id. at 1210-11.)

In any event, even if Price solely shot Brown and Chavis because he was angry that they had not promptly posted his bail, the jury could have reasonably concluded that the shootings were related to the Price-Pressley Enterprise. That is, the jury could have inferred that Price's reputation in Gowanus would have been threatened by the revelation that his associates had not

13

posted his bail and that Price acted to maintain his position of authority in the Price-Pressley Enterprise. Indeed, under this theory, it would not matter whether Price – despite the evidence to the contrary – conducted some of his drug business independently of the Price-Pressley Enterprise. Thus, because the jury's verdict was well-supported by evidence in the record, Price's motion for acquittal under Federal Rule of Criminal Procedure 29 must be denied.

### C. Rule 33 Claims on Murder-Related Charges

Price next argues that the jury's verdict on all counts pertaining to the murder of Chavis and the attempted murder of Brown should be set aside because it was "against the weight of the evidence." (Def. Mem. 49.) Specifically, Price asserts that there was "strong" and "compelling" evidence that he shot Chavis and Brown in self-defense. (Id.) This argument is without merit. The great weight of the evidence presented at trial established that Price killed Chavis and shot Brown intentionally, and not in self-defense.

Foremost among the pertinent evidence is Brown's own account of the events. (Tr. 1090-97.) No other firsthand witness testified at trial. Wright also testified that, when he spoke with Price following Price's acquittal in state court of charges arising from the Chavis murder, Price "chuckled" and told Wright that he was able to "beat" the case by claiming self-defense. (Id. at 1309.) And Evans testified that Price told him that he shot Chavis and Brown because "they had messed up his money." (Id. at 1570.) Finally, forensic evidence presented at trial indicated that Chavis was not shot at a close range and that at least one shot entered his body at a downward angle. (Id. at 1035-36, 1048.) This forensic evidence undermined Price's claim, made to the police following his arrest, that a hand-to-hand struggle immediately preceded the shootings. (Id. at 1229-30.)

14

Price's evidence that he acted in self-defense is limited. After he was arrested, he told the police that he had unexpectedly encountered Brown and Chavis, that he had successfully wrestled a gun from them, shot them both, dropped the gun (although no gun was recovered at the scene) and gone to his girlfriend's apartment to sleep. (Id.) Harvey Howell also testified that Brown told him, while both men were in prison, that Brown was shot when Chavis and Price were "tussling" over a gun during an argument about money. (Id. at 1739.) Brown also signed a statement indicating that he had falsely accused Price of shooting and killing Chavis. (Id. at 1200.)

At trial, however, Brown explained both his comments to Howell and the written statement as an effort to avoid other prisoners identifying him as a "rat" (Id. at 1203-04) and to prevent Price from becoming suspicious that he was cooperating with the government. (Id. at 1195.) And in explaining the shooting to the police, Price had significant motive to lie. His story is also facially implausible and inconsistent with the majority of evidence offered at trial. Having seen the evidence presented at trial and reviewed it here, the court cannot conclude that letting the jury's verdict stand would work a manifest injustice. Price's Rule 33 motion must be denied with respect to the murder-related charges.

### D. Claims Regarding the Witness Tampering Verdict

Finally, Price moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29 with respect to the witness tampering charge (Count 7) or, in the alternative, a new trial under Federal Rule of Criminal Procedure 33. Under 18 U.SC. § 1512(b)(1), it is unlawful to knowingly attempt to "corruptly persuade[] another person . . . with intent to . . . influence [his or her testimony] . . . in an official proceeding." The section was written broadly to encompass noncoercive efforts to tamper with a witness. See United States v. Masterpol, 940 F.2d 760, 763

15

(2d Cir. 1991). The government need only "prove that the defendant's efforts to persuade were motivated by an improper purpose." United States v. Thompson, 76 F.3d 442, 452 (2d Cir. 1996).

The evidence at trial demonstrated that Price sent Wayne Evans a letter stating "Just don't do me dirty homey," asking him to "Give some, not all," and stating "You know nothing about that [Peter Roll]." (Tr. 1605.) Ramsey, Wright, and Evans all testified that "Peter Roll" is a code used by gang members to refer to murder. (Id. at 671, 1269, 1528.) At the time that Price sent the letter, he was already aware that Evans was cooperating with the Government. (Id. at 1602.) Evans testified that, when he received the letter, he understood it to mean that Price "want[ed] me not to tell the government that he told me about . . . . the murder." (Id. at 1605.)

Price offers a strained interpretation of the letter's meaning. He first argues that the statement "Just don't do me dirty" is "on its face a request for Evans to not lie on the stand and make testimony up." (Def. Mem. 56.) Price further asserts that the statement "Give some, not all" is not on its face corrupt, but merely "a meaningless plea from an individual facing serious charges." (Id.) Finally, Price argues that the statement "You don't know nothing about that Peter Roll" was merely a reference to the fact that Evans did not directly witness Chavis's murder. (Id.) Having thus painstakingly parsed the letter, Price asserts that "[t]aking the statement as a whole," any rational juror would conclude that the statement was merely one of persuasion "lacking corrupt intent." (Id. at 57.) The court finds, however, that the evidence – including the content of the letter itself – was sufficient for a reasonable jury to conclude that Price was guilty of witness tampering. The most natural reading of the letter is that Price was attempting to convince Evans not to tell the Government everything that he knew about Price's

criminal activities, including Chavis's murder. Price's motion under Federal Rule of Criminal Procedure 29 and 33 must be denied with respect to this charge.

## III. CONCLUSION

For the aforementioned reasons, Price's motions under Federal Rules of Criminal Procedure 29 and 33 are DENIED.

SO ORDERED.

                                                    s/Nicholas G. Garaufis

Dated: Brooklyn, New York                     NICHOLAS G. GARAUFIS
May 10, 2010                                   United States District Judge