UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────
UNITED STATES OF AMERICA,

    -against-

GERARD PRICE,

    Defendant.

MEMORANDUM & ORDER
05-CR-492 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Gerard Price brings this *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. (Mot. for Reduction (Dkt. 242).) Price contends that his age at the time his crimes were committed, the COVID-19 pandemic, and his rehabilitation together create extraordinary and compelling circumstances that warrant a sentence reduction. (*Id.* at 7, 36.) For the reasons set forth below, Price's motion is DENIED.

I. BACKGROUND

Gerard Price was a leader of the Pressley/Price Enterprise ("the Enterprise"), a drug trafficking and violent criminal organization, which operated in the Gowanus Housing Project from 1992 to 2003. (Presentence Investigation Report ("PSR") (Dkt. 251) ¶¶ 28-29.) Following a two-year investigation, Price was arrested for his involvement in the Enterprise on July 19, 2005. (*Id.* ¶¶ 28, 47.) On January 22, 2009, a grand jury returned a superseding indictment charging Price with seven counts, including: Racketeering ("Count One"), Conspiracy to Commit Racketeering ("Count Two"), Murder In-Aid-Of Racketeering ("Count Three"), Murder in Furtherance of a Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base and Heroin ("Count Four"), Conspiracy to Maintain a Drug-Involved Premises

1

("Count Five"), Use of a Firearm in Furtherance of Drug Trafficking ("Count Six"), and Witness Tampering ("Count Seven"). (Superseding Indictment (Dkt. 94).)

Following a jury trial before this court, Price was convicted of all seven counts. (*See* Jury Verdict (Dkt. 153).) On May 14, 2010, this court sentenced Price to life imprisonment on Counts One, Two, Three, and Four, to run concurrently; 20 years' custody on Count Five, concurrent with the other counts; 10 years' custody on Count Six, concurrent with the other counts; and 20 years' custody on Count Seven, concurrent with the other counts. (Sent. Tr. (Dkt. 208) at 13:7-23.) Price has served approximately 18 years of his sentence. (*See* PSR ¶ 47.)

On October 1, 2021, Price moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, arguing that his age at the time the crimes were committed, the COVID-19 pandemic, and his rehabilitation create extraordinary and compelling circumstances warranting a sentence reduction. (Mot. for Reduction at 7.) The Government responded in opposition on April 29, 2022, arguing that Price had not demonstrated extraordinary and compelling reasons for release and that the factors set forth under 18 U.S.C. § 3553(a) do not counsel a reduced sentence. (*See generally* Gov't Opp. (Dkt. 245).) Price filed a reply brief on June 3, 2022. (Def. Reply (Dkt. 248).)

## II. DISCUSSION

Under § 3582(c)(1)(A), as amended by the First Step Act of 2018, a district court may reduce a defendant's sentence upon motion of either the Director of the Bureau of Prisons ("BOP") or

the defendant. 18 U.S.C. § 3582(c)(1)(A). Once a defendant exhausts the available BOP administrative remedies,[1] a district court may reduce their sentence where (1) extraordinary and compelling reasons warrant such a reduction, (2) the applicable factors in § 3553(a) weigh in favor of said reduction, and (3) such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission. *Id.* The defendant bears the burden of showing entitlement to compassionate release under this Section. *See United States v. Phillibert*, 557 F. Supp. 3d 456, 458 (S.D.N.Y. 2021).

### A. Extraordinary and Compelling Reasons and the Applicable Policy Statements

Although Congress did not define the term "extraordinary and compelling" in § 3582(c)(1)(A), it did instruct the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C § 994(t). The commentary to § 1B1.13 of the Sentencing Guidelines provides that extraordinary and compelling reasons may be found when (1) the defendant's ability to provide self-care within a correctional facility is substantially diminished due to a terminal illness, a serious physical, functional, or cognitive impairment, or an age-related deterioration of physical or mental health; (2) the defendant is at least 65 years old, has served at least 10 years or 75% of the sentence, and is experiencing physical or mental deterioration because of the aging process; or (3) the defendant faces extraordinary family circumstances. U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A)-(C) (U.S. Sent'g Comm'n 2021). Lastly, the commentary provides a fourth catchall provision: "an extraordinary and compelling reason other than, or in combination with, the reasons described

---

[1] The Government does not dispute that Price exhausted his administrative remedies. (Gov't Opp. at 3 n.1.)

[above]." *Id.* at § 1B1.13, cmt. 1(D). In effect, the court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them[.]" *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).[2] The only statutory limit is that rehabilitation *alone* cannot be considered extraordinary and compelling. *Id.* at 237-38 (citing 28 U.S.C § 994(t)).

Price's argument for a sentence reduction is based on his age at the time of his crimes, the COVID-19 pandemic, and his rehabilitation. (Mot. for Reduction at 7.) The court will consider each of these arguments in turn.

    1. Age

Price first argues that his young age at the time of his crimes counsels in support of a reduced sentence. (*Id.* at 4.) Courts may weigh the age at which a defendant committed their crimes when considering whether to grant a sentence reduction. *See Brooker*, 976 F.3d at 238; *United States v. Birkett*, No. 90-CR-1063-24, 2023 WL 4274683, at *4 (E.D.N.Y. June 29, 2023) (collecting cases). Indeed, the Supreme Court has recognized that juveniles under 18 "cannot with reliability be classified among the worst offenders" due to their still developing cognitive abilities and susceptibility to irresponsible behaviors. *See Roper v. Simmons*, 543 U.S. 551, 569-70 (2005).

Here, however, the gravity of Price's underlying conduct cannot merely be explained by his youth. While Price's criminal activity began in January of 1992, his actions both continued and increased in violence until his arrest in 2002. (*See* PSR ¶¶ 39-43, 47-48.) During this decade, Price participated in a series of violent crimes, distributed large quantities of illegal narcotics, and inflicted terror on those living in and around the Gowanus Housing Project. (*See id.* ¶¶ 48-57.) In 1995—at age 16—Price

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

attempted to kill Dora Lee Goddard by throwing her out a fourth-floor window of the Gowanus Housing Project. (*Id.* ¶¶ 4, 54.) In 1998—at age 19—Price and others attempted to murder Percy Sharp and Zuriel Benisrael. (*Id.* ¶¶ 5-6, 41-42.) In August 1999—at age 20—Price murdered Ronald Chavis and attempted to murder Michael Brown. (*Id.* ¶¶ 2-3, 43.) While Price was a teenager for many of these events, his actions can by no means be written off as youthful folly. Price was a repeat violent offender. His actions were not simply "split-second, hot-headed choice[s]" that are "attributable, in some part, to limitations of the adolescent brain." *United States v. Ramsay*, 538 F. Supp. 3d 407, 424 (S.D.N.Y. 2021). Instead, Price repeatedly made calculated decisions to engage in violent activity as a leader of the Enterprise. *See United States v. Ramirez*, 571 F. Supp. 3d 40, 49 (S.D.N.Y. 2021) (finding that although defendant was 19 when he committed his crimes, his role as a violent leader in a criminal enterprise weighed against finding his actions were merely "hot-headed" decisions).[3]

Tellingly, however, at sentencing in 2010—at age 31—Price maintained an "attitude [] of defiance" and "never show[ed] an ounce of remorse." (Sent. Tr. at 11:21-25.) By this time, Price was no longer an adolescent, yet he still failed to display an understanding of the severity and impact of his repeated criminal actions. Accordingly, Price's age at the time of his crimes does not constitute an extraordinary and compelling reason for a sentence reduction.

### 2. COVID-19

Price next argues that his incarceration during the COVID-19 pandemic weighs in favor of a reduced sentence. As this court

---

[3] Moreover, although Price articulates the attributes of youth that courts may consider with respect to compassionate release, he fails to explain how such attributes impacted his own life or decisions. (*See* Def. Reply at 6-9.)

5

has recognized, carceral conditions during the pandemic were more punitive than those of a usual sentence. *United States v. Johnson*, __ F. Supp. 3d __, No. 16-CR-319 (NGG), 2023 WL 3093617, at *10 (E.D.N.Y. Apr. 26, 2023) (describing the severity of incarceration during the height of the pandemic). That said, since the decrease of COVID-19 rates and increase in vaccinations, courts in this Circuit have found that risks posed by the pandemic alone, absent additional factors, do not constitute extraordinary and compelling reasons for release. *Id.* (collecting cases). Instead, in assessing the current risk, courts examine the movant's vaccination status, the COVID-19 conditions at their correctional facility, and the status of their comorbidities. *Id.* (collecting cases).

Here, Price is 44 years old, his medical records reflect only minor conditions, (*see* Ex. A to Gov't Opp. (Dkt. 245-2) at 29-33), and he has not informed the court of any specific comorbidities that put him at a heightened risk of contracting COVID-19. General concerns regarding COVID-19 are not considered extraordinary and compelling. *United States v. Martinez*, No. 03-CR-1049 (NGG), 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022). Further, Price has been vaccinated for COVID-19, (Gov't Opp. at 7), and as of July 24, 2023, his facility of his incarceration, USP Canaan, has no active COVID-19 cases among inmates or staff. *See BOP COVID-19 Statistics*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed July 24, 2023). Further, while Price contracted COVID-19 in January of 2021, he was asymptomatic and later reported having no lingering symptoms. (Ex. A to Gov't Opp. at 17, 47.) As Price notes in his motion, he was, however, subject to reduced recreation time, programming, and visitation throughout the pandemic. (Mot. for Reduction at 4-5.) This court does not disregard the reality of the conditions Price faced while incarcerated during the height of the COVID-19 pandemic. But, due to Price's vaccination status, the reduced prevalence of COVID-19 in his

facility, and his apparent lack of underlying medical conditions, the risk of COVID-19 does not constitute an extraordinary and compelling reason.

### 3. Rehabilitation

Price next argues that his record of rehabilitation counsels a reduction in sentence. (*Id.* at 3-4.) Price has indeed made significant efforts to better himself while incarcerated, including completing the following programs: Managing Stress, American Government, Parenting Special Needs Children, Math College Prep Class, Introduction to Autism, Test Taking Skills, Multiple Intelligence, Resume and Interview Skills, Public Speaking, Parenting, Plants and Animal Science, Thinking Skills, Practical Life Skills, OSHA, and Problem Solving. (*Id.*; Ex. A to Mot. for Reduction (Dkt. 242-1) at 2-3.) As the Government notes, however, Price's rehabilitative strides have been coupled with disciplinary violations while incarcerated, including possession of a dangerous weapon in March 2022. (Ex. B to Gov't Opp. (Dkt. 245-3) at 1.) While the court does not discredit the significant efforts Price has undertaken, his record of repeated and recent infractions while incarcerated undercuts his argument of rehabilitation. Moreover, even if this court was persuaded by Price's rehabilitative efforts, this factor alone does not provide an extraordinary and compelling reason under § 3582(c)(1)(A). *Brooker*, 976 F.3d at 237-38. Price's situation is thus distinguishable from *United States v. Glynn*, No. 06-CR-580 (JSR), 2022 WL 562652 (S.D.N.Y. Feb. 24, 2022), to which he cites. (Def. Reply at 2-4.) There, the court considered a myriad of factors, including both a chronic disease *and* extensive rehabilitation, which, taken together, constituted extraordinary and compelling reasons. *Glynn*, 2022 WL 562652, at *4. Such is not the case here.

### 4. Conclusion

In sum, Price's age at the time his crimes were committed, the COVID-19 pandemic, and Price's rehabilitation do not constitute

7

extraordinary and compelling reasons under § 3582(c)(1)(A). Accordingly, Price is not entitled to a sentence reduction.

### B. § 3553(a) Factors

Even if the court found extraordinary and compelling reasons to reduce Price's sentence, however, the applicable § 3553(a) factors would not support release or sentence reduction. In determining whether a sentence reduction is warranted, a court must also consider the factors articulated in § 3553(a). *United States v. Roney*, 833 F. App'x 850, 853 (2d Cir. 2020) (Summary Order); *United States v. Ferranti*, No. 95-CR-119 (RPK), 2021 WL 768233, at *3 (E.D.N.Y. Feb. 25, 2021). The § 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to "afford adequate deterrence" of criminal conduct; "protect the public from further crimes of the defendant;" and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2). Further, a court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* at § 3553(a)(6). In weighing these factors, courts often consider whether compassionate release would be consistent with the goals of the original sentence. *Roney*, 833 F. App'x at 854; *see, e.g., United States v. Madoff*, 465 F. Supp. 3d 343, 350 (S.D.N.Y. 2020).

In imposing Price's sentence, the court focused on his grievous conduct, both individually and as a leader in the Enterprise, the need to protect the public from further criminal conduct, and his sisters' ability to escape the circumstances of their upbringing. As the court emphasized, Price acted as a leader in a major drug trafficking and violent criminal organization for over a decade.

(Sent. Tr. at 11:15-20.) Price personally used extreme violence in furtherance of the criminal enterprise, including murder. (*Id.* at 11:25-12:1.) Those injured or killed were not the only victims of this organization, as the Enterprise was "a tenacious, arrogant, vicious, [and] violent" organization that "imposed terror" on countless individuals in the community. (*Id.* at 11:15-20, 12:19-23.) At the same time, two of Price's siblings removed themselves from the challenges they faced in the Gowanus Housing Project and found jobs as a teacher and NYPD traffic officer. (*Id.* at 11:10-14.)

In light of these considerations, this court imposed Price's sentence, absent equivocation, stating: "[t]he sentence that I will impose is the only sentence that can guarantee that society will not be damaged further at the hands of a person lacking any remorse, any sense of conscience, any sense of community, any sense of caring." (*Id.* at 12:7-12.) This sentence was meant to reflect the seriousness of Price's grievous conduct, promote respect for the law, provide just punishment for the offense, and to protect the public from further crimes. Most, if not all, of these considerations remain true today.

Separate from the considerations at sentencing, Price contends that his rehabilitative record shows that he has received necessary training and treatment, as required under § 3553(a)(2). (Def. Reply at 11.) While this court commends Price's efforts, it remains unconvinced about Price's rehabilitation. Further, while satisfactory rehabilitation may bear on the need to protect the public from further crimes and to provide a defendant with necessary treatment, this consideration would not necessarily compel a reduction here given the nature and circumstances of the offenses for which Price was sentenced. Accordingly, on balance, reducing Price's sentence would not serve the objectives of § 3553(a).

9

### III. CONCLUSION

For the reasons stated above, Price's motion for compassionate release is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
July 26, 2023

                                                                  s/Nicholas G. Garaufis
                                                          NICHOLAS G. GARAUFIS
                                                          United States District Judge