UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        -against-

GERARD PRICE,

              Defendant.

**MEMORANDUM & ORDER**
**05-CR-492 (NGG)**

GERARD PRICE,

              Plaintiff,

        -against-

UNITED STATES OF AMERICA.

**13-CV-3139 (NGG)**

GERARD PRICE,

              Plaintiff,

        -against-

UNITED STATES OF AMERICA.

**16-CV-3526(NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Gerard Price's *pro se* petition brought under 28 U.S.C. § 2255 for a writ of habeas corpus to vacate, set aside, or correct his sentence and his two motions to amend the petition brought in 2016 and 2019. For the reasons discussed herein, Price's petition is DENIED and his motions to amend are DENIED.

## I. BACKGROUND

Gerard Price was a leader of the Pressley/Price Enterprise (the "Enterprise"), a violent drug trafficking and violent criminal organization, which operated in the Gowanus Housing Projects from 1992 to 2003. (Presentence Investigation Report ("PSR")

(Dkt. 251) ¶¶ 28-29.) Following a two-year investigation, Price was arrested for his involvement in the Enterprise on July 19, 2005. (*Id.* ¶¶ 28, 47.) On January 22, 2009, a grand jury returned a superseding indictment charging Price with seven counts, including: racketeering (Count One); conspiracy to commit racketeering (Count Two); murder in-aid-of racketeering (Count Three); murder in furtherance of a conspiracy to distribute and possess with intent to distribute cocaine base and heroin (Count Four); conspiracy to maintain drug-involved premises (Count Five); use of a firearm in furtherance of drug trafficking (Count Six); and witness tampering (Count Seven). (Superseding Indictment (Dkt. 94).)

Following a jury trial before this court, Price was convicted of all seven counts. (*See* Jury Verdict (Dkt. 153).) On May 14, 2010, this court sentenced Price to life imprisonment on Counts One, Two, Three, and Four, to run concurrently; 20 years' incarceration on Count Five, concurrent with the other counts; 10 years' incarceration on Count Six, concurrent with the other counts; and 20 years' incarceration on Count Seven, concurrent with the other counts. (Sent. Tr. (Dkt. 208) at 13:7-23.) Price later appealed his conviction on ineffective assistance of counsel and sufficiency of the evidence grounds, and appealed this court's denial of his Rule 33 motion for a new trial. *See generally United States v. Price*, 443 F. App'x 576 (2d Cir. 2011) (Summary Order). The Second Circuit rejected Price's challenges and affirmed his conviction on October 5, 2011. *Id.*

Since 2012, Price has filed a number of post-conviction motions and petitions challenging his conviction and sentence. First, on May 16, 2013, Price filed a *pro se* § 2255 petition asserting ineffective assistance of counsel. (*See* Mem. in Supp. of First Mot. to Vacate ("2013 Petition") (Dkt. 209).) Then, on May 12, 2015, Price moved for a reduction of his sentence based on his belief

that Amendment 782 to the sentencing guidelines was retroactive and made him eligible for resentencing. (*See* First Mot. for Reduction (Dkt. 212).) The court denied that motion on October 1, 2015, finding that Amendment 782 did not mandate a reduction in sentencing and that Price's conviction for murder in-aid of-racketeering had a statutory minimum sentence of life imprisonment. (*See* October 1, 2015 Order (Dkt. 217).) On June 27, 2016, Price again moved to vacate his conviction for use of a firearm in furtherance of a drug trafficking crime following the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015) and *Welch v. United States*, 578 U.S. 120 (2016). (Mot. to Vacate ("2016 Mot.") (Dkt. 219).) Nearly three years later, on March 29, 2019, Price again moved to vacate on the basis that this his life sentences were unconstitutional pursuant to the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012). (Am. Mot. to Vacate ("2019 Mot.") (Dkt. 229).)[1] Finally, on October 1, 2021, Price moved for compassionate release under the First Step Act, arguing that "extraordinary and compelling circumstances" warranted a sentence reduction. (*See* Second Mot. to Reduce (Dkt. 242).) The court denied this final request this past summer. (*See* July 28, 2023 M&O (Dkt. 252).) The court now considers Price's outstanding filings from 2013, 2016, and 2019.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced in federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such

---

[1] Price submitted an additional letter to the court, signed July 25, 2023, and docketed on September 11, 2023, requesting that the court issue a ruling on this most recent ground for relief, or, in the alternative, appoint counsel. (*See* Sept. 11, 2023 Ltr. (Dkt. 253).)

sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).[2] "[A] motion under § 2255 is not a substitute for direct appeal[.]" *Sapia v. United States*, 433 F.3d 212, 217 (2d Cir. 2005). A claim raised for the first time in a § 2255 petition is forfeited unless the petitioner can show either: "(1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." *Rosario v. Untied States*, 164 F.3d 729, 732 (2d Cir. 1998). "Cause" may be demonstrated by showing that procedural default is the result of ineffective assistance of counsel. *Wang v. United States*, No. 11-CV-3699 (AMD), 2018 WL 4211355, at *5 (E.D.N.Y. Sept. 4, 2018). Petitions brought under § 2255 are also subject to a 1-year limitation period, which runs from different dates depending on the basis of the relief sought. 28 U.S.C. § 2255(f).

## III. DISCUSSION

### A. Motion to Amend Petition

#### 1. Construing as Motion to Amend

Price's first § 2255 petition was filed with the court on May 16, 2013.[3] He subsequently filed two additional filings, the first on June 27, 2016, and the second on March 29, 2019. (*See generally* 2016 Mot.; 2019 Mot.) The court has not yet responded to any of these requests for relief.

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

[3] On December 18, 2012, Price submitted a "placeholder" petition asserting that his Sixth Amendment right to counsel had been violated because he was deprived of effective counsel, and that his sentence violated the Fifth and Sixth Amendments based on facts not alleged in the Indictment. (*See* Placeholder Pet. (Dkt. 207).) The court views this as purely a placeholder rather than the petition for relief.

Under § 2255(h), "a second or successive motion must be certified . . . by a panel of the appropriate court of appeals to contain" either "(1) newly discovered evidence," or "(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court[.]" 28 U.S.C. § 2255(h). For a § 2255 petition to become successive, "it must have been filed after the adjudication of a prior § 2255 motion that has become final." *Fuller v. United States*, 815 F.3d 112, 113 (2d Cir. 2016). Where a habeas petitioner has filed a supplemental brief before adjudication on the merits of an existing § 2255 petition, the district court may construe the brief as a motion to amend rather than a successive petition. *See Wilson v. United States*, No. 13-CR-777-3 (AJN), 2019 WL 3752476, at *2 (S.D.N.Y. Aug. 8, 2019) (citing *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002)); *Alshalabi v. United States*, No. 11-CV-1421 (RJD), 2012 WL 3779226, at *1 (E.D.N.Y. Aug. 29, 2012).

Because the court has not yet adjudicated Price's 2013 petition, his 2016 and 2019 filings are not successive petitions. The court construes them as motions to amend the initial petition. *See Ching*, 298 F.3d at 175 (concluding that "a habeas petition submitted during the pendency of an initial § 2255 motion should be construed as a motion to amend the initial motion"); *Hotton v. United States*, No. 12-CR-649 (JS), 2019 WL 5310673, at *9 (E.D.N.Y. Oct. 21, 2019) (same).

### 2.   Motion to Amend

"A motion for leave to amend a pending Section 2255 petition is evaluated under the liberal pleading standard of Federal Rule [of] Civil Procedure 15(a)[.]" *Marciante v. United States*, No. 17-CV-2945 (SJ), 2022 WL 684084, at *5 (E.D.N.Y. Mar. 8, 2022); *see also Ching*, 298 F.3d at 180. Under this Rule, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory

motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Thaler v. United States*, 706 F. Supp. 2d 361, 368 (S.D.N.Y. 2009); *see also Marciante*, 2022 WL 684084, at *5 (denying a motion to amend a § 2255 petition on futility grounds); *Thristino v. United States*, 379 F. Supp. 2d 510, 515-17 (S.D.N.Y. 2005) (same).

Applying the standard of review controlling § 2255 petitions, both of Price's motions to amend fail on futility grounds. Price's 2016 motion argues that he is "entitled to relief on count six" due to the Supreme Court's decisions in *Johnson* and *Welch*. (2016 Mot. at 1.) At trial Price was convicted of use of a firearm in furtherance of drug trafficking (Count Six), in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Jury Verdict at 5; PSR at ¶ 106.) Neither *Johnson* nor *Welch* dealt with this offense. Both cases pertained to a sentencing enhancement for defendants convicted on a felon in possession of a firearm offense who had three or more previous convictions for a "violent felony." *See* 576 U.S. at 593; 578 U.S. at 122-23. The Supreme Court in *Johnson* struck down § 924(e)(2)(B)'s "residual clause" defining "violent felony" for unconstitutional vagueness. 576 U.S. at 597. It then made this holding retroactive in *Welch*. 578 U.S. at 135.

When the Government wrote in opposition to Price's motion in 2016, it urged the court not to address whether the logic of these cases extended to convictions under § 924(c). (Gov't Opp. to 2016 Mot. (Dkt. 224) at 2.) Subsequent to the Government's briefing, the Supreme Court applied *Johnson's* logic to the § 924(c) context, striking down § 924(c)(3)(B)'s "residual clause" defining the term "crime of violence," finding that it too was unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2323-24 (2019); *see also id.* at 2326 (citing *Johnson*). *Davis* did little, however, to support Price's claim for relief, as it did not invalidate § 924(c) convictions premised on "drug trafficking

6

crimes." *See United States v. Ramirez*, No. 13-CR-135 (RJS), 2022 WL 2703596, at *15 (S.D.N.Y. July 11, 2022). Courts in this Circuit continue to hold that drug trafficking crimes are viable predicate offenses for § 924(c) convictions even after *Davis*. *See, e.g., United States v. Tyrell*, 840 F. App'x 617, 624 (2d Cir. 2021) (Summary Order); *Ramirez*, 2022 WL 2703596, at *15; *Osborne v. United States*, No. 14-CR-0264 (JS), 2022 WL 1693668, at *8 (E.D.N.Y. May 26, 2022).

Price was convicted under § 924(c)(1)(A) for using and carrying a firearm during and in relation to multiple drug trafficking crimes. (*See* Superseding Indictment at 12-13; Jury Verdict at 5.) These crimes included conspiracy to distribute cocaine base and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and conspiracy to maintain a drug-involved premises, in violation of 21 U.S.C. § 846 and 856(a)(1). (*See* Superseding Indictment at 6-7; 11-12; Jury Verdict at 3-5.) These are both plainly felonies punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.) and therefore "drug trafficking crime[s]" for purposes of § 924(c)(1)(A). *See* 18 U.S.C. § 924(c)(2). Price's 2016 motion to amend is thus futile, even if construed charitably as making a claim under *Davis*.

Price's 2019 motion fares no better. He contends that the court should vacate his mandatory life sentences under the Eighth Amendment in light of the Supreme Court's 2012 decision in *Miller*, which held that mandatory life sentences without the possibility of parole for defendants 18 and under at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishment. (*See* 2019 Mot. at ECF 2-3.) Price, who was 20 at the time of the offense at issue, argues that the court should extend *Miller's* logic to his case because the same factors that render sentences of mandatory life imprisonment without the possibility of parole unconstitutional for juveniles are also present in 20-year-olds. (*Id.* at ECF 18-19.) He cites *Cruz v.*

*United States,* No. 11-CV-787 (JCH), 2017 WL 3638176, at *13 (D. Conn. Apr. 3, 2017), a 2017 district court case applying *Miller* to a defendant approximately 18 and a half years old, as support. (2019 Mot. at ECF 4-5.)

This argument is foreclosed, however, by clear Second Circuit precedent limiting *Miller's* holding *only* to those 18 and under. *See United States v. Sierra,* 933 F.3d 95, 97 (2d Cir. 2019) ("Since the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences, the defendants' age-based Eighth Amendment challenges to their sentences must fail."); *see also United States v. Suarez,* No. 21-193 (L), 2023 WL 3144037, at *4 (2d Cir. Apr. 2023) (refusing to extend *Miller* to a defendant who was 22 when he committed the relevant crimes); *United States v. Frank,* 832 F. App'x 764, 765 (2d Cir. Jan. 2021) (Summary Order) (same for a 20-year-old defendant); *United States v. Tyrell,* 840 F. App'x 617, 624 (2d Cir. 2021) (Summary Order) (same for a 19-year-old defendant). Thus, Price's request for relief from his life sentences on Eighth Amendment grounds is meritless.

Accordingly, because both proposed amendments would be futile, the court DENIES Price's 2016 and 2019 motions to amend.

## B.   2013 Petition

Having denied Price's motions to amend, the court turns now to his original 2013 petition. On December 18, 2012, Price submitted a "placeholder" petition asserting that his Sixth Amendment right to counsel had been violated because he was deprived of effective assistance of counsel. (*See generally* Placeholder Pet.) Price submitted another version of this motion, which was dated May 8, 2013 and docketed on May 16, 2013, both on his criminal docket and on a new civil habeas docket, 13-CV-3139. (*See* 2013

Petition; 13-CV-3139, Motion (Dkt. 1).)[4] The two documents
were effectively the same. (*See* Placeholder Pet; 2013 Petition.)
Price later filed a memorandum in support of his petition, (13-
CV-3139, 2013 Petition Mem. (Dkt. 9)), and a supplement. (13-
CV-3139, 2013 Petition Supp. Mem. (Dkt. 13).) The Government
subsequently filed an opposition, (13-CV-3139, Opp. to 2013 Pe-
tition (Dkt. 14)), and Price filed a reply. (13-CV-3139, 2013
Petition Reply (Dkt. 19).) The Government also filed an affidavit
from one of Price's trial attorneys, Bobbi Sternheim, in response
to Price's petition. (13-CV-3139, Aff. of Bobbi Sternheim (Dkt.
22-1).)

Price argues for relief on ineffective assistance of counsel
grounds.[5] A convicted defendant making an ineffective assis-
tance of counsel claim must show *both* (1) that "counsel's

---

[4] Price's 2013 Petition is within the one-year limitation period under §
2255(f)(1). Price was sentenced on May 14, 2010. (5/14/2010 Minute
Entry.) He appealed his conviction to the Second Circuit, (*see* Notice of
Appeal (Dkt. 197)), but this court's judgment was affirmed on October 5,
2011. *See Price*, 443 F. App'x at 582. The mandate from the Circuit was
docketed on October 27, 2011. (Mandate of USCA (Dkt. 199).) A judg-
ment becomes final for post-conviction purposes where the Supreme Court
"affirms a conviction on the merits on direct review or denies a petition for
a writ of certiorari, or when the time for filing a petition expires." *Clay v.
United States*, 537 U.S. 522, 527 (2003). The court has been unable to
identify a petition for certiorari. Price's judgment thus became final 90 days
after entry of the Second Circuit's judgment—*i.e.,* January 3, 2012. Price
submitted his "placeholder" petition on December 18, 2012. (*See* Place-
holder Pet.) Price submitted another version of this motion dated May 8,
2013, which was docketed on May 16, 2013, both on his criminal docket
and on the new civil habeas docket, 13-CV-3139. (*See* 2013 Petition; 13-
CV-3139, Motion.) Measuring from the date of the "placeholder," Price's
motion is timely.

[5] Habeas petitioners that already raised one or more ineffective assistance
claims on direct appeal may raise additional ineffective assistance claims
in a habeas proceeding when they are based on different actions or inac-
tions by counsel. *Yick Man Mui v. United States*, 614 F.3d 50, 55 (2d Cir.

performance was deficient" meaning that counsel "made errors so serious that [the attorney] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The performance inquiry is contextual" and looks to whether counsel's actions were "objectively reasonable considering all the circumstances" in light of the "prevailing norms of practice." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000). The prejudice prong requires the court to determine whether "but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005).

Price raises five grounds for his trial counsel's ineffective assistance: (1) providing inadequate and incorrect advice regarding a plea offer; (2) failing to object to the quantity of heroin attributed to him; (3) improperly stipulating to a substance being cocaine base—*i.e.,* crack cocaine; (4) failing to object to the in-court reading of a letter of a non-testifying individual; and (5) not raising Fifth and Sixth Amendment challenges to his life sentences. (*See* 2013 Petition Mem. at ECF 1.) The court addresses these arguments in turn.

### 1.   Ground 1

Price first argues that he was deprived of effective assistance because his trial counsel failed to advise him to take the Government's plea offer for a 30-year incarceratory sentence. (*Id.* at ECF 4-5.)

---

2010). Though Price unsuccessfully raised ineffective assistance arguments on direct appeal, *Price*, 443 F. App'x at 578-80, he raises different ineffective assistance arguments in his habeas petition. These new arguments are not barred.

*Strickland's* two-part test applies to the plea-bargaining process, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), including where the defendant rejected a plea offer and was later convicted at a fair trial. *Lafler v. Cooper*, 566 U.S. 156, 164-66 (2012). During the plea-bargaining process, counsel is expected to "communicate to the defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy*, 208 F.3d at 45. That being said, the "ultimate decision whether to plead guilty must be made by the defendant . . . [a]nd a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." *Id.* Defense counsel "enjoys a wide range of reasonableness" due to the need to balance "failing to give advice and . . . coercing a plea." *Id.*

To establish prejudice in this context, a defendant must show that there is a reasonable probability the outcome of the plea process would have been different with competent advice. *Lafler*, 566 U.S. at 163. "[A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been [accepted by the defendant and] presented to the court . . ., that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164. "[A] defendant can make this showing by producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for his counsel's deficient performance *and also* some additional 'objective evidence' supporting his claim." *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (Summary Order) (emphasis added). That said, a "self-serving, post-conviction statement" may be insufficient to prove a "reasonable probability" that a defendant would have accepted a plea agreement. *United States v. Gordon*, 156 F.3d 376, 380-81

(2d Cir. 1998). The district court must find the "petitioner's evidence to the effect that he would have made a different decision but for his counsel's advice to be credible." *Mavashev v. United States*, No. 11-CV-3724 (DLI), 2015 WL 1508313, at *7 (E.D.N.Y. Mar. 31, 2015) (citing *Frederick*, 526 F. App'x at 93).

Price contends that Sternheim instructed him not to accept a plea offer for 30 years' incarceration because he would be acquitted at trial. (2013 Petition Mem. at ECF 4-5.) Sternheim also purportedly failed to advise Price that the decision to accept the plea was his, explain the benefits of accepting the plea, or provide sound advice about the offer. (*Id.* at ECF 7.) Price claims that he would have accepted the Government's offer and avoided his multiple life sentences but for Sternheim's deficient performance. (*Id.*) Price submitted a signed affidavit attesting to this narrative. (13-CV-3139, Aff. in Supp. Petition (Dkt. 10).)

Price's account is, however, flatly contradicted by Sternheim's Affidavit and its attachments. According to Sternheim, Price's allegations are "factually incorrect" and there "was no 30-year plea offer." (Aff. of Bobbi Sternheim ¶ 5.) Rather, while Price sought a 30-year plea offer, Sternheim states that she was only able to obtain a 35-year offer. (*Id.* ¶¶ 7-8.) Price rejected this offer over Sternheim's protestations and proceeded to trial. (*Id.* ¶¶ 10-14, 17.) Sternheim further affirms that she never told Price he would win at trial, that she informed him of the risks of proceeding to trial and of his authority to accept or reject the plea, and that Price made the informed decision to reject the plea offer. (*Id.* ¶¶ 16, 22-24.) To support her account, Sternheim submits the Government's 35-year plea offer and her emails with the prosecutors attempting to negotiate an offer for 30 years. (*See* Exs. A-D of Aff. of Bobbi Sternheim at ECF 6-25.)

In this context, the court does not find Price's account of events credible. *See Mavashev*, 2015 WL 1508313, at *7. Sternheim's Affidavit and the attached exhibits show that the Government

never extended a 30-year plea deal and that Price refused to accept the standing 35-year offer. This plainly contradicts Price's Affidavit. The court thus views the representations in Price's Affidavit as "self-serving, post-conviction statement[s]." *Gordon*, 156 F.3d at 380. Because this ground for ineffective assistance rests wholly on the existence of a 30-year plea offer—for both the deficient performance and prejudice prongs—the court rejects it.

### 2.   Ground 2

Price next argues that his trial counsel was deficient for failing to object to the quantity of heroin attributed to him at sentencing. (2013 Petition Mem. at ECF 1.) He claims that the record lacks evidence of his involvement with heroin sales, (2013 Petition Supp. Mem. at ECF 2), or knowledge of his co-conspirator's heroin dealings. (2013 Petition Reply at 6.) As a result, Price argues, the amount of heroin attributed to him at sentencing was "erroneous and unjust." (2013 Petition Supp. Mem. at ECF 4.)

Under *Strickland,* "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689. "Even 'a course of action (or inaction) that seems risky, unorthodox or downright ill-advised' may not fall below the constitutional standard." *Price*, 443. F. App'x at 579 (quoting *Tippins v. Walker,* 77 F.3d 682, 686 (2d Cir. 1996)). "Failure to make a meritless argument does not amount to ineffective assistance. Nor does an action or omission that might be considered sound trial strategy constitute ineffective assistance." *United States v. Arena,* 180 F.3d 380, 396-97 (2d Cir. 1999), *abrogated in part on other grounds by Scheidler v. Nat'l Org. for Women,* 537 U.S. 393, 403 n.8 (2003). Performance is also to be "evaluated from counsel's perspective at the time of the alleged error and in

light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The failure of Price's counsel to object to the amount of heroin attributed to him at sentencing was not "objectively unreasonable considering all the circumstances." *Purdy*, 208 F.3d at 44. "Under fundamental conspiracy law [a defendant] is responsible for any amount of [illegal narcotics] that his co-conspirators agreed to import so long as these amounts were within the scope of the conspiracy and reasonably foreseeable by him." *United States v. Jackson*, 335 F.3d 170, 183 (2d Cir. 2003). Price argues that there was no trial testimony about his involvement with heroin sales or that he had knowledge of any heroin dealings. (2013 Petition Supp. Mem. at ECF 2; 2013 Petition Reply at 6.) But there was extensive trial testimony regarding Eddie Presley and Robert Price's (Gerard's brother) heroin dealings, (*see, e.g.*, Trial Tr. 817:25-821:6 (Dkt. 136); Trial Tr. 843:25-844:2 (Dkt. 137); Trial Tr. 1257:2-1260:4 (Dkt. 138)), and Petitioner Price's involvement in the Price-Presley Enterprise's drug distribution ring. (*See* Trial Tr. 848:3-853:20; *id.* at 921:19-922:12; Trial Tr. 1273:16-1275:16.) A reasonable fact-finder could infer from this testimony alone that the Enterprise's heroin dealings were within the scope of its drug-distribution conspiracy and reasonably foreseeable to Price. That Price oversaw the distribution of crack cocaine rather than heroin does not change this conclusion. (*See* 2013 Petition Reply at 6.) The Price-Presley Enterprise was a single conspiracy to distribute illegal narcotics, not two separate conspiracies centered around different drugs. (PSR ¶¶ 28-29.) The notion that Price was unaware of the scope of the Enterprise's heroin operations is simply unbelievable, especially since "nobody" other than the members of the Price-Presley Enterprise sold heroin at the Gowanus Houses at the time. (Trial Tr. 1260:2-4.) In this context, Price's trial counsel did not perform outside the "wide range of reasonable professional assistance" by failing to object to the heroin attributed to him. *See, e.g., Mosquea v.*

*United States*, No. 09-CV-5546 (BSJ), 2010 WL 1838872, at *5 (S.D.N.Y. Apr. 28, 2010).

Price has also not shown that he was prejudiced at sentencing by the attribution of heroin to him. To the contrary, Price's conviction on Count Three—murder in-aid-of racketeering—carried a mandatory term of life imprisonment, (*see* PSR ¶ 180; 18 U.S.C. § 1959(a)(1)), ensuring that Price would receive a life sentence regardless of the quantity of illegal narcotics attributed to him. Further, the 60 kilograms of heroin did not even impact Price's guidelines range. At trial Price was found to have committed Racketeering Act 6(A), which charged him with conspiring to distribute and possess with intent to distribute cocaine base and heroin. (PSR ¶ 19.) Racketeering Act 6(A) only impacted Price's sentence on Counts One and Two, racketeering and conspiracy to commit racketeering. The guidelines range on these counts was not set by Price's drug distribution offense; it was established by his murder of Ronald Chavis—Racketeering Act 1(A). (*Id.* ¶¶ 64-69, 107-08.)[6] Thus, even if there were not a mandatory term of life imprisonment related to Count Three, the attribution of

---

[6] Even if it did, the amount of crack cocaine attributed to Price on its own set his adjusted offense level for a conviction under 18 U.S.C. § 21 U.S.C. §§ 841(a)(1), 846 at the highest possible level. Price's PSR attributed 35 kilograms of crack cocaine and 60 kilograms of heroin to him. (*Id.* ¶ 50.) Per the sentencing guidelines, the PSR converted these quantities of crack cocaine and heroin into their corresponding marijuana equivalencies and added them together to produce a single drug quantity. (*Id.*) The PSR found that the 35 kilograms of crack cocaine was equivalent to 700,000 kilograms of marijuana and the 60 kilograms of heroin was equivalent to 60,0000 kg of marijuana, for a total of 760,000 kilograms of marijuana attributable to Price. (*Id.*) Under the sentencing guidelines in place at the time, the base offense level for 30,000 kilograms or more of marijuana was 38, the maximum offense level under the Guidelines then in effect. *See* U.S. Sent'g Guidelines Manual § 2D1.1(c) (U.S. Sent'g Comm'n 2008). This threshold would have been reached without the 60 kilograms of heroin.

heroin would not have impacted Price's sentence. Price's second ground for his ineffective assistance claim thus also fails.

### 3.    Ground 3

Price's third ground pertains to his trial counsel's concession that various Government exhibits contained crack cocaine. (*See* 2013 Petition Mem. at ECF 1.) Indeed, Price's counsel stipulated that the substance identified in Government Exhibits 34, 36, 38, 39, 40, 41, 42, 44, 45, 51, 89, 90, 91, 93, 94, and 96 was cocaine base—*i.e.,* crack cocaine. (Trial Tr. 1664:22-1667:9 (Dkt. 228).) Yet, this was by no means unreasonable given the context in which the Government introduced these Exhibits. The Government introduced Exhibits 34 and 36 through Officer Thomas Jureiwicz, who testified that they were vials of crack cocaine that he purchased from Price's associates inside the Gowanus Houses, (Trial Tr. 592:20-595:1; 597:19-598:11); Exhibits 38, 39, 40, 41, and 42 through Detective Rodney Moore, who testified to the same effect, (Trial Tr. 611:1-612:8; 616:1-616:23; 620:14-621:20); Exhibit 45 through Detective Richard Hennessy, who said he seized the vial of crack cocaine while executing a search warrant in the Gowanus Houses, (Trial Tr. 760:18-763:1); and Exhibit 89, 93, 94 through Detective Joseph Fazzingo, who testified that the vials were crack cocaine taken from a confidential informant inside the Gowanus Houses. (Trial Tr. (Dkt. 139) 1418:2-1421:16.)[7] A reasonable juror could have concluded that the substance contained in these exhibits was crack cocaine based only on the testimony of the NYPD officers that introduced the exhibits. *See United States v. Gladden*, 394 F. Supp. 3d 465, 472-73 (S.D.N.Y. 2019). These Exhibits were also not the only way that the Government connected Price to crack distribution—

---

[7] The court has not been able to identify Exhibits 44, 51, 90, 91, and 96 being entered into evidence in the trial transcript.

multiple witnesses testified to such. (*See* Trial Tr. 848:3-853:20; *id.* at 921:19-922:7; Trial Tr. 1273:16-1274:16.)

In this context, it was a reasonable trial strategy to stipulate to the contents of the Exhibits. There was substantial evidence that the Exhibits contained crack cocaine. Further belaboring the matter may well have weakened Price's defense. *See Gladden*, 394 F. Supp. 3d at 473 ("Thus, because all available evidence suggests that Government Exhibit 20 was crack cocaine, and that it would have weakened the defense to make an issue of it, [the petitioner] has not demonstrated that trial counsel was ineffective for stipulating to that fact."). This ground for ineffective assistance therefore also fails.[8]

### 4.   Ground 4

Price further argues that his trial counsel was ineffective for failing to object to the in-court reading of a letter from Vincent Castro. (*See* 2013 Petition Mem. at 1.) When testifying about the execution of a search warrant at 235 Hoyt Street Apartment 11-A, Detective Fazzingo noted the recovery of a letter addressed to Robert Price from Vincent Castro. (Trial Tr. 1435:25-1437:25.) He then read the letter into the record:

> Gus and Ed, here are the papers for the time I'm doing -- I'm going to do for Gus so Gus can stop talking shit that I'm not here for your drugs. There is $150 surcharge I got to pay the

---

[8] Citing to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Price also suggests that his trial counsel's stipulation to the exhibits containing crack cocaine violated his right to a jury determination of every element of the crime for which he is charged. (2013 Petition Mem. at ECF 11.) Yet the Second Circuit has repeatedly found that a defendant's stipulation at trial to a drug's type and quantity does not violate *Apprendi*. *See United States v. White*, 240 F.3d 127, 133-35 (2d Cir. 2001); *United States v. Champion*, 234 F.3d 106, 109-10 (2d Cir. 2000).

> courts. I want you to send me the money as soon as you re-
> ceive this letter. Whatever . . . and cut the bullshit and do the
> right thing for me. Don't fuck me. Paco.

(*Id.* at 1438:2-8.) The Government did not ask any follow-up questions after Detective Fazzingo finished reading the letter. (*Id.*) Price now contends that his trial counsel performed defi-ciently by failing to object to the reading of this letter on Confrontation Clause and hearsay grounds. (2013 Petition Mem. at ECF 12-15.)

The court disagrees. Price's trial counsel was not deficient in this regard both because of counsel's substantial discretion in trial strategy for ineffective assistance purposes, *Strickland*, 466 U.S. at 689, and because such objections were unlikely to succeed. The Confrontation Clause guarantees criminal defendants the right "to be confronted with [] witnesses against him." U.S. Const. amend. VI. This right only applies to witnesses who prof-fer "testimonial" statements against the defendant. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). The Second Circuit has noted that "*Crawford* at least suggests that the determinative fac-tor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial[.]" *United States v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004).[9] Regardless, the statements in Castro's letter were not clearly testimonial. The letter was not prompted by any law enforcement or judicial inquiry; it was sent to ask Price and Presley for money to pay for a fine. Castro may have had some inkling that letters sent from Riker's Island could come into law enforcement's possession, potentially making the state-ment contained therein testimonial, but this conclusion is far from certain. In this context, Price's trial counsel did not perform

---

[9] However, the Circuit later clarified that this language was dicta. *United States v. Feliz*, 467 F.3d 227, 235 (2d Cir. 2006)

below professional standards by failing to object on Confrontation grounds. Success on such an objection was a dubious proposition at best and the decision not to object was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The same applies for counsel's failure to object on hearsay grounds. Hearsay is an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Based on the trial transcript, it is not clear whether the contents of Castro's letter were introduced for their truth. Prosecutors read Castro's letter when discussing materials confiscated in a search of Apartment 11-A at 235 Hoyt Street in the Gowanus Houses. (Trial Tr. April 16, 2009 at 1436:13-1438-9.) The letter, which was addressed to Robert Price at Apartment 11-A, (*id.* at 1437:14-18), could have been read to establish Presley and Robert Price's ownership of or residency in the apartment rather than the truth of its contents. Immediately before prosecutors asked Detective Fazzingo about Castro's letter, they questioned him about a telephone bill also found on the premises addressed to Presley at Apartment 11-A. (*Id.* at 1436:25-1437:9.) Prosecutors also did not ask Detective Fazzingo any follow-up questions about Castro's letter immediately after he finished reading it. (*Id.* 1438:1-12.) Viewed in this context, Castro's letter was not clearly offered for its truth. Price's trial counsel may have reached the same conclusion and thought a hearsay objection would be futile.

Moreover, Price has not established prejudice from this omission. Castro's letter did not mention Price or attribute any conduct to him. (*See id.* at 1438:1-8.) To the extent that the letter was used to show Presley's ownership of or residency in Apartment 11-A, this had already been established through the telephone bill. (*See id.* at 1436:15-14:37-9.) Price argues that he was prejudiced "dramatically due to the way that the government structured the case as a Pressley-Price enterprise," (2013 Petition Mem. at ECF

14), but does not elaborate on how the Government's introduction of the letter relates to this contention, or how this would not have been established but for this introduction. (*Id.*) This ground thus also fails.

### 5.   Ground 5

Price finally contends that his counsel was ineffective for failing to argue that his life sentences violated the Fifth and Sixth Amendments because they were based on facts not alleged in the Indictment, nor found by the jury. (*See* 2013 Petition Mem. at ECF 1.) He relies on *Apprendi* and *Alleyne v. United States*, 570 U.S. 99 (2013), to argue that factors used at sentencing must be tried before a jury and proven beyond a reasonable doubt. (2023 Petition Supp. Mem. at ECF 5.) Because the Indictment and jury verdict did not reference life imprisonment, he argues, this sentence was unconstitutional and his counsel was deficient for not objecting on this basis. (*Id.* at ECF 7.)[10]

But this argument fundamentally misconstrues *Apprendi* and *Alleyne.* These cases pertain to facts used to establish statutory maximum and minimum penalties, not facts that courts use to impose a sentence within applicable statutory ranges. The Supreme Court held in *Apprendi* that "any fact that increases the

---

[10] At times in his motion, Price appears to argue that his life sentences violated the Fifth and Sixth Amendments, rather than that his counsel was ineffective for failing to raise this argument. (*See* 2013 Petition Supp. Mem. at ECF 5-7; 2013 Petition Reply at 12-15.) The former arguments would be barred because Price did not raise them on direct appeal. *See Rosario*, 164 F.3d at 732. The latter line, however, may be raised because ineffective assistance may provide cause for not raising an issue on direct appeal. *Wang*, 2018 WL 4211355, at *5. A *pro se* party's submissions are to be liberally construed. *Geritano v. United States*, No. 03-CR-970 (RPK), 2023 WL 3499511, at *5 (E.D.N.Y. May 17, 2023) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Accordingly, the court construes Price's claim as one for ineffective assistance of counsel for failure to object to the imposition of a life sentence on Fifth and Sixth Amendment grounds.

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. *Alleyne* established that "facts that increase the mandatory minimum sentence . . . must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 108. Price has not provided, and the court has not identified, *any authority* requiring the sentencing court to only consider factors proven by a jury in determining where to sentence a defendant within the applicable statutory range. *See United States v. Ryan*, 806 F.3d 691, 694 (2d Cir. 2015) (noting that a "district court's factual findings at sentencing need be supported only by a preponderance of the evidence").

Moreover, the court's life sentences on Counts One, Two, Three, and Four do not raise *Apprendi* or *Alleyne* concerns. The statutory minimum sentences on these counts were established through conviction alone; no enhancements were utilized at the sentencing stage to raise the floors. In addition, the life sentences that the court imposed were not outside the statutory maximums. Price received life sentences on his convictions for racketeering (Count One), racketeering conspiracy (Count Two), murder in-aid-of-racketeering (Count Three), and murder in furtherance of the conspiracy to distribute and possess with intent to distribute cocaine base and heroin (Count Four). (Sent. Tr. at 13:7-23.) Murder in-aid-of-racketeering carries a mandatory life sentence. *See* 18 U.S.C. § 1959(a)(1)). The drug-related murder charge allows for "any term of imprisonment," such as life imprisonment. 21 U.S.C. § 848(e)(1)(A). Convictions for racketeering and conspiracy to commit racketeering carry 20-year maximum sentences unless a predicate offense carries a penalty of life imprisonment. 18 U.S.C. § 1963(a). Price was found to have committed Racketeering Act 1(A), the murder of Ronald Chavis in violation of New York Penal Law Section 125.25(1), (PSR ¶ 2), which carries a maximum sentence of life imprisonment. N.Y. Penal Law §§70.00(2), 125.25. These life sentences were thus

consistent with *Apprendi* and *Alleyne*, and any objection on this basis would have failed. This ground for ineffective assistance therefore also fails because Price's counsel was not deficient for failing to raise these arguments. *See Arena*, 180 F.3d at 396-97.[11]

## IV. CONCLUSION

In sum, the court construes Price's 2016 and 2019 filings as motions to amend his initial 2013 Petition. Because such amendments would be futile, both the 2016 and 2019 motions to amend are DENIED. Price's 2013 Petition seeking relief for ineffective assistance of counsel is also DENIED, as is Price's request for a hearing. The Clerk of Court is respectfully directed to close dockets 13-CV-3139 and 16-CV-3526.

SO ORDERED.

Dated:      Brooklyn, New York
            September 27, 2023

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

---

[11] Price also notes that his trial counsel performed deficiently in failing "to object to the extrapolated drug amounts" attributed to him at trial. (2013 Petition Supp. Mem. at ECF 6.) For the reasons discussed *supra*, Price's trial counsel did not perform deficiently in failing to object to the heroin attributed to him at trial.